Sheldon S. Levy, J.
This is a case of first impression. As first impression cases go, this one may well affect the entire towing and trucking industry, as well as any private persons employing similar hauling methods or tractor-trailer combinations in daily tasks, private occupations, or on vacation jaunts.
By this declaratory judgment action, plaintiff Mount Vernon Fire Insurance Company (Mount Vernon) seeks judicial sanction for its position that it need not provide coverage for its liability-insured trailer while in the tow of a tractor insured by another insurance company. The specific claim, and the one necessitating a novel ruling, is that an exclusionary *718 clause contained in the tractor policy and incorporated by express reference into the Mount Vernon policy, permits noncoverage where "any trailer covered by this policy is used with any automobile [defined also to mean 'tractor’] owned or hired by the insured and not covered by like insurance in the company” (emphasis mine).
In this case, the facts are not in dispute and the parties agree that only legal questions are involved. The 1969 GMC tractor of Smolowitz Brothers Van Lines, Inc. (Smolowitz), which was insured by Travelers Indemnity Company (Travelers), was pulling a 1970 Dorsey semitrailer, also owned by Smolowitz, when the combined vehicles were involved in an accident with a vehicle of the original plaintiff Gino Trotta.
Subdivision 1 of section 388 of the Vehicle and Traffic Law clearly places liability jointly and severally upon the owners of both the tractor and the trailer (in this case the same owner — Smolowitz) for any injuries to a plaintiff resulting from negligence in the operation of either the tractor or the trailer, or both in combination.
Travelers, the tractor insurer, influenced by its interpretation of the mandates of section 388 of the Vehicle and Traffic Law and disagreeing with Mount Vernon, concedes coverage to the full extent of its policy, and suggests a similar concession by Mount Vernon. Mount Vernon, however, denies coverage completely under the circumstances, and relies solely upon the aforesaid exclusionary clause. Nevertheless, in my view, this exclusionary clause, as against vehicle owners, clearly is invalid and contrary to public policy in at least two separate respects.
When the Appellate Division, Fourth Department, reviewed recently another type of exclusionary clause in a liability insurance policy, it equally appropriately stated: "This clause fails to comply with the requirement that a personal injury liability insurance policy covering a motor vehicle contain a provision 'insuring the named insured against liability * * * as a result of negligence in the operation or use of such vehicle by any person operating or using the same with the permission, express or implied, of the named insured’ (Insurance Law, § 167, subd 2; see, also, Vehicle and Traffic Law, § 388, subds 1, 4). The exclusionary clause fails to require the existence of other insurance sufficient to meet the minimum standards of coverage established by our financial responsibility laws and is therefore violative of this State’s public policy *719 (compare Davis v De Frank, 33 AD2d 236, affd 27 NY2d 924). 'The policy of insurance issued must be as broad as the insured owner’s liability for use of the vehicle by the owner or anyone using the vehicle with his permission’ (Rosado v Eveready Ins. Co., 34 NY2d 43, 49)”. (Randazzo v Cunningham, 56 AD2d 702.)
Similar exclusionary clauses, as the one now pressed by Mount Vernon, have uniformly been held invalid and unenforceable (see Mancuso v Bellerive, 54 AD2d 689 [2 cases]; Wheeler v Piscina, 277 App Div 1014, app dsmd 302 NY 689; Employers Mut. Liab. Ins. Co. of Wis. v Indemnity Ins. Co. of North Amer., 37 Misc 2d 421, 427; Royal Ind. Co. v American Cas. Co. of Reading Pa., 5 Misc 2d 533).
If the contention urged by Mount Vernon were accepted, and if the subject type of exclusionary clause were afforded full validity in all insurance policies, it is plain to discern that an innocent and unsuspecting public would have foisted upon its public roads and highways a mass of in-tow or attached vehicles that, for all practical purposes, would be completely uninsured. Even if responsible liability carriers for the tow vehicle admitted full coverage under similar circumstances, the in-tow vehicle, constituting usually at least half of the combination, would still be without liability coverage. The accident victim, as a practical matter, would be able to seek recompense for injuries only from the tow vehicle carrier. The coverage for this tow vehicle would in many cases be wholly inadequate to compensate fully for the tortious acts committed by the driver of the vehicular combo.
To carry Mount Vernon’s argument to its logical (or illogical) conclusion, even though the premium for liability insurance coverage for the trailer was fully paid, if it was not being towed by a vehicle also equally insured by Mount Vernon, the trailer in tow would have no insurance at all. Instead, the liability policy apparently would be effective, if at all, only in such situations as where the trailer not in tow spontaneously rolled down a hill and happened to strike some person, vehicle or object.
Obviously, no Legislature would have envisioned or would condone such a result which flies squarely into the countenance of the insurance laws of this State, and especially of those laws more recently enacted which mandate minimum compulsory insurance coverage for each vehicle traversing our highways and roads (Insurance Law, § 167, subd 2). The plain *720 intent of these statutory enactments cannot be permitted so easily to be thwarted.
Moreover, and equally important, I am also concerned that the subject exclusionary clause, besides being violative of a public policy requiring mandatory insurance is, in addition, abhorrent to antimonopoly legislation. Why should the owner of a trailer be required, even after paying a premium for a liability insurance policy for such vehicle, to secure like insurance from the same company for any vehicle that may tow the trailer in order to have any realistic coverage for the trailer? Even if one tow vehicle were so insured, what would happen in any situation, emergency or otherwise, where another vehicle was required for the tow? Would the owner of the tow vehicle have to secure immediately new insurance from the same company that insured the trailer or would the trailer owner have to rush to find an agent of the tow vehicle’s insurance company, whether he liked that company or not and regardless of their rates, to purchase any kind of effective trailer insurance? Why should not the individual owners of both the tow and in-tow vehicles (or the single owner, if jointly owned) be able to shop around to secure the best liability insurance rates for the individual vehicles? What is the only practical reason for such an exclusionary clause if not to enhance prospects for the sale of additional insurance by the initial insurer and, in fact, to mandate such single company coverage. If there is any other reason involving safety, inspection or otherwise, it most certainly has not been expressed by the parties nor included in the terminology of any of subject insurance policies.
To permit, in practice, such an exclusionary policy would not be in the public interest nor in the interests of the trucking industry, where it is well known that trailers, tractors, haulers and tow vehicles of all types are frequently independently owned and operated. In fact, even the driver of such combination vehicles is often an independent contractor himself. In the instant case, where the trailer and tractor were owned by one organization, insurance coverage for both vehicles with a single company would be at least feasible. However, feasibility in some instances cannot be equated with legality in all instances, since the principles involved would affect all owners of such tow and in-tow vehicles. To require independent owners, often involved in interstate commerce, to obtain joint insurance or insurance on their respective vehi *721 cíes with the same company, would surely be against the public policy of this State and repugnant to various Federal laws and constitutional requirements as well.
If the same insurance company is chosen by individual preference or by sheer coincidence, the result cannot be invalid. If the same insurance company is mandated by virtue of an exclusionary clause in its own policy of liability insurance, then the result cannot be valid.
As to the regulations promulgated by the Superintendent of Insurance and which appear to give sanction to an exclusionary provision similar to the subject clause (see 11 NYCRR Part 60), it should be obvious that a regulation cannot take precedence over State statutory law (see Matter of Spitaleri v Hartford Acc. & Ind. Co., 88 Misc 2d 431; General Mut. Ins. Co. v Sun Ins. Co. of N. Y., 24 AD2d 135; Vehicle and Traffic Law, § 388, subds 1, 4). A regulation which is in conflict with the clear terminology of a statutory enactment is not one "permitted by law” and may not be implemented (see Rosado v Eveready Ins. Co., 34 NY2d 43, 48-49).
One other point should be covered. Should the insurance company insuring the trailer — merely because it rides behind a tow vehicle on the road or because the driver usually is riding in the tow vehicle — only be secondarily liable or excess? I think not. When a trailer is actually in tow, it constitutes with the tow vehicle a single, unified, unique vehicular combination. When it strikes another vehicle, it does so with the full force of the combined vehicles. Whether it is, under such circumstances, the tractor or the trailer that does the actual striking and makes the actual contact, the stricken object will know full well that it has been struck and will for all intents and purposes suffer the same damages. In other words: "Whether the stone hits the pitcher or the pitcher hits the stone, it’s going to be bad for the pitcher” (Leigh & Darion, "A Little Gossip” from "Man of LaMancha,” act II).
Accordingly, in justice and fairness, and as a matter of logic and equity, both insurance companies should pay their proportionate shares (in this case, 50-50) to the full extent of their respective policies, in recompensing the loss for any resultant injuries (see Travelers Ins. Co. v General Acc., Fire & Life Assur. Corp., 28 NY2d 458; Fidelity & Cas. Co. of N. Y. v Cosmopolitan Mut. Ins. Co., 41 AD2d 100, 102).
For the reasons stated, the request of plaintiff, Mount Vernon Fire Insurance Company, for a declaratory judgment *722 in its favor is in all respects denied. Instead, this court now declares and adjudges that Mount Vernon is fully liable for coverage under the terms of its trailer liability indemnity insurance policy; that Smolowitz Brothers Van Lines, Inc., be afforded complete insurance coverage by Mount Vernon to the full extent of its policy; and that Mount Vernon and Travelers Indemnity Company each pay its proportionate share for any loss ultimately adjudged in favor of the original plaintiff, Gino Trotta.